IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

NO. **21-14133-JJ**

Michael Harding,

Appellant,

- versus -

United States,

Appellee.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

BRIEF FOR THE UNITED STATES

> Markenzy Lapointe
> United States Attorney
> Attorney for Appellee
> 99 N.E. 4th Street
> Miami, Florida 33132-2111
> 305-961-9386

Lisa Tobin Rubio
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Jacob Koffsky
Assistant United States Attorney
Of Counsel

**Harding v. United States, Case No. 21-14133-JJ**

**Certificate of Interested Persons**

In compliance with Fed. R. App. P. 26.1 and 11th Circuit Rules 26.1 and 28-1, the undersigned certifies that the list set forth below is a complete list of the persons and entities previously included in the CIP included in the appellant's initial brief, and also includes additional persons and entities (designated in bold face) who have an interest in the outcome of this case and were omitted from the appellant's CIP.

Acosta, Diana Margarita

Barnes, Antonia J.

Brannon, Hon. Dave Lee

Caruso, Michael

Cohen, Michael B.

C.W.

Fajardo Orshan, Ariana

Ferrer, Wifredo A.

Funk, Daniel E.

Gonzalez, Juan Antonio

Goodman, Hon. Jonathan

**Harding v. United States, Case No. 21-14133-JJ**

**Certificate of Interested Persons (Continued)**

Greenberg, Benjamin G.

Harding, Michael Edwin

H.W.

Killinger, Russell R.

Klugh, Jr., Richard Carroll

**Koffsky, Jacob**

**Lapointe, Markenzy**

Lowenthal, Sheryl Joyce

Lynch, Jr., Hon. Frank J.

Matthewman, Hon. William

Montaner, Marlene C.

Peacock, Fletcher

Rassie, Ellen

Reid, Hon. Lisette M.

Rivero, Laura Thomas

Rosenberg, Hon. Robin L.

Rubio, Lisa Tobin

Simonton, Hon. Andrea M.

**Harding v. United States, Case No. 21-14133-JJ**

**Certificate of Interested Persons (Continued)**

White, Charles Garret

White, Hon. Patrick A.


s/ *Jacob Koffsky*
Jacob Koffsky
Assistant United States Attorney

**Statement Regarding Oral Argument**

The United States of America respectfully suggests that the facts and legal arguments are adequately presented in the briefs and record before this Court and that the decisional process would not be significantly aided by oral argument.

# Table of Contents

**Page**:

Certificate of Interested Persons ........................................................ c-1

Statement Regarding Oral Argument ....................................................i

Table of Contents ............................................................................ii

Table of Citations ...........................................................................v

Statement of Jurisdiction...................................................................xi

Statement of the Issues......................................................................1

Statement of the Case:

    1.     Course of Proceedings and Disposition in the Court Below ............1

          a.     Underlying Criminal Case .......................................1

          b.     Direct Appeal ....................................................4

          c.     Harding's 28 U.S.C. § 2255 motion .........................5

          d.     The Government's Response ...................................6

    2.     Statement of the Facts ...................................................12

    3.     Standards of Review ....................................................12

Summary of the Argument ...............................................................13

**Table of Contents**

**(continued)**

<u>**Page:**</u>

Argument and Citations of Authority:

I.    The District Court did not violate *Clisby* when it addressed Harding's claim that his attorney did not advise him that he would be subject to civil commitment ............................................................................................... 14

    A.    The district court satisfied *Clisby* because it resolved Harding's claim in a way that can be meaningfully reviewed on appeal ......... 15

    B.    The district Court satisfied *Clisby* even if it reframed Harding's failure-to-advise claim into one about affirmative misadvice because its analysis necessarily disposed of both claims................. 20

II.    Harding's attorney did not render ineffective assistance by failing to advise him that his nolo contendere plea could result in civil  commitment, and even if he had, Harding suffered no prejudice from it........................ 23

    A.    Harding fails *Strickland*'s performance prong because a lawyer's failure to advise about civil commitment—which is a "collateral consequence" of a guilty plea—isn't ineffective assistance ........................................................................................... 26

iii

**Table of Contents**

**(continued)**

**Page:**

B.    Harding fails *Strickland*'s "prejudice" prong because he cannot show a reasonable probability that he would've gone to trial if his lawyer had advised him about civil commitment ................... 33

Conclusion   ......................................................................................... 38

Certificate of Compliance ...................................................................... 39

Certificate of Service  ............................................................................ 39

## Table of Citations

**Cases:**                                                              **Page:**

*Barritt v. Sec'y, Fla. Dept. of Corr.*,

   968 F.3d 1246 (11th Cir. 2020) ............................................................ 16, *passim*

*Bauder v. Department of Corrections*,

   619 F. 3d 1272 (11th Cir. 2010) ............................................................ 5, *passim*

*Bauder v. Dep't of Corr. of Fla.*,

   333 F. App'x 422 (11th Cir. 2009) ............................................................ 31, 32

*Brady v. United States*,

   397 U.S. 742 (1970) ............................................................ 27

*Carver v. United States*,

   722 F. App'x 906 (11th Cir. 2018) ............................................................ 17

*Chaidez v. United States*,

   568 U.S. 342 ............................................................ 27, 30, 31

*Clisby v. Jones*,

   960 F.2d 925 (11th Cir. 1992) ............................................................ 1, 15

*Derting v. Sec'y, Dep't of Corr.*,

   2022 WL 104280 (11th Cir. 2022) ............................................................ 20, 21, 22

*Downs-Morgans v. United States*,

   765 F.2d 1534 (11th Cir. 1985) ............................................................ 29

**Table of Citations**

**(Continued)**

**Cases:**                                                              **Page:**

*Dupree v. Warden*,

    715 F.3d 1295 (11th Cir. 2013) ............................................................... 12, *passim*

*Faldas v. Sec'y, Fla. Dep't of Corr.*,

    431 F. App'x 803 (11th Cir. 2011) .......................................................17

*Frank v. Blackburn*,

    646 F.2d 873 (5th Cir. 1980) ...............................................................28

*Gaddy v. Linahan*,

    780 F.2d 935 (11th Cir. 1986) .............................................................28

*George v. Black*,

    732 F.2d 108 (8th Cir. 1984) ...............................................................28

*Gissendaner v. Seaboldt*,

    735 F.3d 1311 (11th Cir. 2013) ...........................................................26

*Hill v. Lanahan*,

    697 F.3d 1032 (11th Cir. 1983) ...........................................................35

*Hill v. Lockhart*,

    474 U.S. 52 (1985).. ...................................................................... 33, 34

# Table of Citations

## (Continued)

**Cases:**                                                                  **Page:**

*Holladay v. Haley*,

   209 F.3d 1243 (11th Cir. 2000) ...............................................................13

*Holley v. United States*,

   718 F. App'x 898 (11th Cir. 2017) .......................................................17

*Holmes v. United States*,

   876 F.2d 1545 (11th Cir. 1989) ...........................................................29

*Jackson v. United States*,

   463 F. App'x 833 (11th Cir. 2012) ............................................... 10, 11

*Lee v. United States*,

   137 S. Ct. 1958 (2017) ........................................................... 12, *passim*

*Long v. United States*,

   626 F.3d 1167 (11th Cir. 2010) ............................................. 15, 19, 22

*Mamone v. United States*,

   559 F.3d 1209 (11th Cir. 2009) ...........................................................12

*McKiver v. Sec'y, Fla. Dep't of Corr.*,

   991 F.3d 1357 (11th Cir.) ....................................................................34

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                                                    <u>Page</u>:

*McMann v. Richardson*,

    397 U.S. 759 (1970) ...........................................................................23

*Padilla v. Kentucky*,

    559 U.S. 356 (2010) ........................................................... 23, *passim*

*Pickard v. Thompson*,

    170 F. App'x 86 (11th Cir. 2006)......................................................27

*Rhode v. United States*,

    583 F.3d 1289 (11th Cir. 2009)............................................ 15, *passim*

*Riolo v. United States*,

    38 F.4th 956 (11th Cir. 2022)...................................................... 24, 26

*Senter v. United States*,

    983 F.3d 1289 (11th Cir. 2020)............................................ 14, *passim*

*Sims v. United States*,

    785 F. App'x 632 (11th Cir. 2019)...................................................29

*Smith v. White*,

    815 F.2d 1401 (11th Cir. 1987)........................................................35

**Table of Citations**

**(Continued)**

<u>Cases</u>:                                                                                          <u>Page</u>:

*Steele v. Murphy*,

   365 F.3d 14 (1st Cir. 2004) .......................................................................28

*Strickland v. Washington*,

   466 U.S. 668 (1984) ............................................................. 10, *passim*

*Tejada v. Dugger*,

   941 F.3d 1551 (11th Cir. 1991) ............................................................34

*United States v. Campbell*,

   778 F.3d 764 (11th Cir. 1985) .............................................. 27, *passim*

*United States v. Harding*,

   696 F. App'x 955 (11th Cir. 2017) ...................................................4, 28

*United States v. Kwan*,

   407 F.3d 1005 (9th Cir. 2005) ...............................................................31

*United States v. Morse*,

   36 F.3d 1070 (11th Cir. 1994) ...............................................................27

*United States v. Youngs*,

   687 F.3d 56 (2d Cir. 2012) ................................................................ 25, 28

**Statutes & Other Authorities:**                                    **Page:**

18 U.S.C. § 2251 ................................................................. 2, 3, 4

18 U.S.C. § 2252 .....................................................................1

18 U.S.C. § 2422 .................................................................1, 25

18 U.S.C. § 4248 ....................................................................24

28 U.S.C. § 1291 ..................................................................... xi

28 U.S.C. § 1331 ..................................................................... xi

28 U.S.C. § 2254 ....................................................................15

28 U.S.C. § 2253 ..................................................................... xi

28 U.S.C. § 2255 ........................................................... xi, *passim*

34 U.S.C. § 20911 ..................................................................25

34 U.S.C. § 20913 ..................................................................25

Fla. Stat. § 394.9125 ..............................................................25

Fed. R. App. P. 4 ..................................................................... xi

Fed. R. App. P. 26.1 ....................................................... c 1 of 3

Fed. R. App. P. 32 ..................................................................39

Fed R. Crim. P. 11 ..............................................................4, 26

Fla. R. Crim. P. 3.172 ............................................................28

## Statement of Jurisdiction

This is an appeal from a final order of the district court denying Harding's 28 U.S.C. § 2255 motion to vacate his conviction and sentence (CVDE 1).[1]  The district court entered its order denying the motion on September 28, 2021 (CVDE 84).

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and remedial authority pursuant to 28 U.S.C. § 2255.  Harding timely filed his notice of appeal on November 26, 2021 (CVDE 85); *see* Fed. R. App. P. 4(a).  This Court issued a Certificate of Appealability ("COA") on June 10, 2022.  This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and remedial authority pursuant to 28 U.S.C. §§ 2253(c)(1) and 2255.

---

[1] We refer to docket entries in the § 2255 litigation as "CVDE." We refer to docket entries in the underlying criminal case as "CRDE."

**Statement of the Issues**

This Court granted a COA on the following two issues:

(1)    Whether the district court violated *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), by failing to address specifically Harding's claim that his plea was involuntary because his attorney did not advise him that he could be subject to post-incarceration civil commitment.

(2)    Regardless of any potential *Clisby* error, whether Harding's attorney rendered ineffective assistance by failing to advise him that his *nolo contendere* plea could result in post-incarceration civil confinement, and, if so, whether that ineffective assistance prejudiced him.

**Statement of the Case**

**1.  <u>Course of Proceedings and Disposition in the Court Below</u>**

**a.      Underlying Criminal Case**

In November 2015, a federal grand jury in the Southern District of Florida returned a second superseding indictment charging Harding with three counts of distributing child pornography, in violation of 18 U.S.C. § 2252(a)(2) and (b)(1) (Counts 1–3); one count of possessing child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2) (Count 4); one count of attempting to coerce and entice a minor to engage in sexual activity, in violation of 18 U.S.C. § 2422(b) (Count 5);

and one count of producing child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Count 6) (CRDE 32).

Harding knew he would face similar charges in Florida state court, too; in October 2015, the State Attorney's Office had filed a warrant for his arrest, which detailed several criminal charges (all child-exploitation offenses) against him. *See Florida v. Harding*, Case No.: 2015CF002947A (19th Jud. Cir. 2015). In a series of status conferences before the district court, Harding's federal lawyer conveyed his expectation that the state charges would carry with them a mandatory minimum life sentence (CRDE 124: 6–7); (CRDE 125:6–7).

In February 2016, Harding pled guilty to Counts 1–4 and *nolo contendere* to Counts 5 and 6, without a plea agreement (CRDE 76); (CRDE 128: 51–53). His lawyer had explained to the court during one of the status conferences that by pleading to the charges in this way, Harding hoped to earn a sentence reduction for acceptance of responsibility while avoiding admissions of guilt in the pending state prosecution, which was poised to commence after his federal case concluded (CRDE 127: 4–13).

At his change of plea hearing, Harding confirmed he was satisfied with his attorney and that they'd had sufficient time to discuss the pleas (CRDE 128:6–7). He confirmed that nobody made him any promises or assurances to convince him to plea (CRDE 128:8). He recognized that, by entering into the pleas, he'd be

adjudged guilty of all six crimes in the indictment, and he acknowledged the maximum penalties for each of those crimes—including, as to Count 5, a potential life sentence (CRDE 128:10–14).

Harding also confirmed his understanding that his conviction "will result in substantial restrictions where he may live, work and associate" (CRDE 129:25–26). And, when asked whether he needed additional time to confer with his attorney about those "substantial restrictions," Harding replied "No, Your Honor" (*id.*).

After conducting an extensive plea colloquy with Harding, the district court concluded that he "freely, voluntarily and intelligently entered his plea of guilty as to Counts 1 through 4, and nolo contendere to 5 and 6" and adjudged him guilty on each count of the indictment (CRDE 128:56).

In May 2016, the district court sentenced Harding to life imprisonment, "consist[ing] of 240 months as to Counts 1 through 4, life as to Count 5, and 360 months as to Count 6, all to be served concurrently." (CRDE 130: 164). The district court also ordered Harding to serve a life term of supervised release (*id.*). And the district court announced several "special conditions" to be imposed on Harding during the period of supervision, including registration as a sex offender in

compliance with the requirements of the Sex Offender Registration and Notification Act ("SORNA") (CRDE 130 at 167).[2]

### b.    Direct Appeal

Harding appealed his federal convictions and sentence to this Court, which affirmed on all grounds.    *See United States v. Harding*, 696 F. App'x 955 (11th Cir. 2017).   One of Harding's contentions on direct appeal was "that his guilty plea was not entered knowingly and voluntarily because *the district court* failed to inform him . . . . that he would be required to register as a sex-offender and would be subject to additional restrictions and penalties under federal and state sex-offender-registration laws."   *Id*. at 957 (emphasis added).   This Court rejected that argument, holding that "[n]othing in [Fed R. Crim. P. 11] mandates that the district court explain that a defendant convicted of certain sex offenses must comply with federal and state sex-offender laws."   *Id*.   This Court further ruled that "Harding has failed to demonstrate a reasonable probability that—but for the district court's failure to explain the sex-offender-registration laws—he would not have entered his plea."   *Id*.

---

[2] The related state case against Harding commenced in August 2016—after his federal sentencing—and concluded in October 2019, when he pled guilty to the seven child-exploitation charges against him.   *See generally Florida v. Harding*, Case No.: 2015CF002947A (19th Jud. Cir. 2015).   Harding was sentenced to a thirty-year term of imprisonment that would run concurrently with his federal sentence.   *See id*. at (DE 156).

**c.      Harding's 28 U.S.C. § 2255 motion**

In September 2018, Harding filed a timely 28 U.S.C. § 2255 motion to vacate

his plea and sentence as to all six counts in the indictment (CVDE 1).   Harding

raised seven grounds, only one of which—Ground Two—matters in this appeal.

Harding included several claims within Ground Two:

> **Ground Two:** Counsel provided ineffective assistance in violation of
> the Sixth Amendment by failing to properly advise Petitioner
> concerning application of the federal sentencing guidelines, and
> affirmatively providing inaccurate legal advice that was fundamental
> to, and determinative of, the decision to plead guilty. Moreover,
> Counsel affirmatively misadvised Petitioner concerning the
> consequences of a (guilty and nolo contest) plea; *and specifically failed*
> *to advise him that a plea would subject him to mandatory registration*
> *as a sex offender and possible indefinite civil commitment.*   Counsel's
> constitutionally ineffective representation and affirmative
> misinformation further evidences that Petitioner's plea was not
> knowingly, voluntarily, or intelligently entered.

(CVDE 1-1:4) (emphasis added).

In support of his contention that his lawyer "specifically failed to advise him

that a plea would subject him to mandatory registration as a sex offender and

possible indefinite civil commitment," Harding said the following:

> Not only did counsel misinform and misadvise Petitioner concerning
> his sentencing exposure as a result of entering a plea versus going to
> trial, but admittedly, counsel also failed to advise Petitioner that as a
> direct consequence of his plea, he would be mandatorily required to
> register as a sex offender and would be subject to possible indefinite
> civil commitment.   In *Bauder v. Department of Corrections*, 619 F. 3d
> 1272 (11th Cir. 2010), the Eleventh Circuit held that an attorney's
> failure to advise a defendant that pleading guilty could subject him to
> indefinite civil commitment is a violation of the defendant's Sixth

Amendment rights and requires a reversal of a conviction and leave to withdraw a guilty plea.   In this case, counsel admittedly never advised Petitioner that pleading guilty could subject him to indefinite civil commitment, and during the plea colloquy, there was no mention of the possibility of civil confinement.   Just as in *Bauder*, it was critical that Mr. Harding be fully informed of these consequences of his plea, and counsel's failure to do so requires that Mr. Harding's conviction be reversed and that he be given the opportunity to withdraw his plea.

(CVDE 1-1:7).[3]

### d.    The Government's Response

The Government opposed Harding's motion (CVDE 6).   As relevant here, the Government urged the court to deny all of Harding's ineffective-assistance-of-counsel claims in Ground Two without an evidentiary hearing—including his claim that his lawyer failed to advise him about civil commitment (*id*. at 26–30).

The Government observed that "[Harding] does not claim affirmative misadvice.   Rather, he claims that counsel never advised [him] that pleading guilty could subject him to indefinite civil commitment, and during the plea colloquy, there was no mention of the possibility of civil commitment" (*id*. at 29). And the Government's response was two-fold.   *First*, the Government contended that Harding "has failed to articulate how he would be automatically subject to

---

[3] There's one other relevant allegation in Harding's motion, even though he includes it in a separate claim for relief.   In that allegation, Harding says "[h]ad defense counsel or the court properly advised [him] that[,] as a consequence of the plea, he would be subject to mandatory registration as a sex offender and to possible indefinite civil commitment, he would not have entered his plea and would have insisted on going to trial" (CVDE 1-1:10).

6

involuntary commitment or that it is clear from any statute or rule that his plea would necessarily result in involuntary commitment" (*id*.).

*Second*, the Government argued that civil commitment was a "collateral consequence" of Harding's decision to plead *nolo contendere* to Count 5 and that—even if his lawyer failed to advise him about it—such failure was not ineffective assistance of counsel *(id*.)

### e.    The Evidentiary Hearing

The magistrate judge held a two-day evidentiary hearing on Harding's claims in Grounds Two and Four of his motion (CVDE 76); (CVDE 77).[4]    On the first day, Harding testified for several hours, divulging the details of several conversations with his lawyer about the charges against him and, if he were to plead guilty to them, the sentence he might receive as a result (CVDE 76).    Those conversations focused particularly on the likelihood of Harding receiving a sentence of life imprisonment if he were to plead guilty (CVDE 76:24–38); (CVDE 76:41–45).

But Harding did not provide any details about his counsel's alleged failure to advise him that civil commitment could be a consequence of his plea.    *See generally id*.    In fact, Harding never mentioned civil commitment at all throughout his direct

---

[4] During the hearing, Harding orally withdrew his claims as to Counts 1 through 4 and clarified that he sought to vacate only his *nolo contendere* plea he'd entered as to Counts 5 and 6 (CVDE 77:142–145).

examination.  *See generally id*.   And on cross examination, Harding admitted that,

because of his prior training as a police officer, he'd known about certain

consequences for individuals who pled guilty to sex-related criminal offenses:

> [The Government]: And did you know about sex offenses and
> mandatory reporting as a part of your training and experience as a law
> enforcement officer?
>
> [Harding]: To the extent of mandatory reporting to DCF, yes.
>
> [The Government]: And you knew that was based on pleas to sex
> offenses, is that right?
>
> [Harding]: I'm sorry?
>
> [The Government]: You knew that that was based on pleas to when
> someone took a plea to a particular sex offense, they were required to
> register as a sex offender.   You knew that, right?
>
> [Harding]: Right.
>
> [The Government]: Based on your training and your education at the
> Indian River State College, right?
>
> [Harding]: I had a general understanding but not specifics, no.

(CVDE 76 at 49:19–50:7).

Harding's lawyer testified on the second day of the evidentiary hearing

(CVDE 77:5–104).   He testified about the effect that the state proceedings against

Harding had on the federal case (CVDE 76:27–29) and about his strategy, with

which Harding agreed, to reduce sentencing exposure (CVDE 76:30–41).   He did

not testify to anything relevant to the issue of whether he advised his client about the

possibility of civil commitment.  *See generally id*.

### f.    The Report & Recommendation

At the conclusion of the hearing, the magistrate judge issued a Report and Recommendation ("R&R") to deny the motion in full (CVDE 72).

The magistrate judge summarized the testimony from the evidentiary hearing (CVDE 72: 10–16).  In pertinent part, the magistrate judge noted that Harding "made no representations as to the advice he was given about whether he would have to register as a sex offender.  However, the Government asked [him] about the training he underwent as a police officer and whether he was ever instructed about mandatory reporting.  [Harding] replied he knew about mandatory reporting to the Department of Children and Families" (*id*. at 11).

The magistrate judge addressed—and then rejected—Harding's claims that his "[c]ounsel was ineffective for failing to properly advise [him] . . . that . . . [he] would be subject to mandatory registration as a sex offender and possible indefinite civil commitment" (*id*. at 19).  In fact, the magistrate judge dedicated an entire subsection of the R&R to doing so (*id*. at 19–21) (subsection titled "Indefinite civil commitment" within a larger section addressing Harding's "Claim 2: Counsel was ineffective for failing to properly advise Movant of the application of the sentencing guidelines, including that Movant would be subject of mandatory registration as a sex offender and possible indefinite civil commitment").

The magistrate judge began his analysis by discussing Harding's reliance on *Bauder* (*see id*. at 19–20). The magistrate judge explained that the lawyer in *Bauder* affirmatively misadvised the petitioner about the possibility of civil commitment and that, as a result, this Court concluded that such affirmative misadvice constituted deficient performance under *Strickland v. Washington*, 466 U.S. 668 (1984) (*see id*. at 19).

Next, the magistrate judge highlighted another decision from this Court—*Jackson v. United States*, 463 F. App'x 833 (11th Cir. 2012)—as one that "provides guidance" (*id*. at 20). In *Jackson*, the magistrate judge wrote, this Court "granted a certificate of appealability on the issue of '[w]hether the district court erred by denying the claim that Jackson's plea was not knowing and voluntary as counsel was ineffective for failing to advise him that he would have to register as a sex offender if he pled guilty'" (*id*.) (quoting *Jackson*, 463 F. App'x at 834). The magistrate judge further commented that this Court "vacated the district court's ruling and remanded for the district court to make a factual finding as to 1) whether counsel misadvised Movant, and 2) whether rejecting the plea bargain would have been rational under the circumstances" (*id*.) (quoting *Jackson*, 463 F. App'x at 835).

The magistrate judge then applied *Bauder* and *Jackson* to Harding's claim. The magistrate judge stated that "Movant bears the burden of proving 1) he was affirmatively misadvised in this case and 2) that rejecting the plea bargain would

10

have been rational under the circumstances, per *Jackson*" (*id.*).    And, based on the

evidence in the record, the magistrate judge held that Harding faltered at the first

step:

> Movant has not met his burden as to the assertion that counsel
> affirmatively misadvised Movant on whether he would have to register
> as a sex offender.  Movant did not put on any testimony that he
> received any misadvice regarding any indefinite civil commitment or
> registration as a sex offender.  In fact, Movant testified that he was
> aware of some mandatory sex-offender reporting requirements because
> of his training as a police officer.

*(Id.* at 20).

Likewise, the magistrate judge held that Harding failed to meet his burden at

the second step:

> Further, Movant cannot show that had he known about the consequence
> of registering as a sex offender, his plea would not have been rational
> under the circumstances.  In fact, Movant withdrew his Motion to
> Vacate Counts 1–4 of the indictment.   By pleading guilty to Counts 1–
> 4, Movant would have to register as a sex offender under the Florida
> Sex Offender Act (Fla. Sta. § 943.0435(1)(a)(2)–(3)).   Movant cannot
> show that rejecting the no contest plea to Counts 5 and 6 would have
> been rational when he has already pled guilty to offenses that require
> him to register as a sex offender.

*(Id.* at 20–21).

Therefore, the magistrate judge concluded that "this portion of Claim 2 should

be denied" (*id.* at 21).

### g.    Harding's Objections to the R&R

Harding objected to the R&R (CVDE 80).   Regarding Ground Two, Harding argued that the magistrate judge employed an incorrect legal standard in the R&R by not applying a Supreme Court case called *Lee v. United States*, 137 S. Ct. 1958 (2017).   Harding never objected that the magistrate judge failed to address his claim that his lawyer failed to advise him about involuntary civil commitment.

The district court adopted the R&R in full (CVDE 84).   This appeal timely followed.

### 2.  Statement of the Facts

All facts relevant to this appeal are contained in the Course of Proceedings section.

### 3.  Standards of Review

In an appeal from the denial of a 28 U.S.C. § 2255 motion, this Court reviews the district court's legal conclusions *de novo* and its factual findings for clear error. *See Mamone v. United States*, 559 F.3d 1209, 1210 (11th Cir. 2009) (internal citation omitted).   This Court reviews *de novo* the "legal question of whether the district court violated the rule announced in *Clisby*."   *Dupree v. Warden*, 715 F.3d 1295, 1299–1300 (11th Cir. 2013).

The issue of whether a petitioner's counsel is ineffective is "a mixed question of law and fact" subject to *de novo* review.    *See Holladay v. Haley*, 209 F.3d 1243, 1247 (11th Cir. 2000) (cleaned up).

## Summary of the Argument

### Issue 1

The district court satisfied *Clisby* in the way it resolved Harding's claim that his lawyer's failure to advise him about the possibility of civil commitment was ineffective assistance.

Under *Clisby*, the district court needed only to address each of Harding's ineffective-assistance-of-counsel claims meaningfully enough for appellate review. And the district court did that here when it adopted the magistrate judge's thorough, three-page analysis that specifically denied Harding's claim.    Because this Court can meaningfully review that analysis, there was no *Clisby* violation.

Harding—apparently misunderstanding the rule in *Clisby* and its progeny— argues that the district court violated *Clisby* because it "recast [his] claim as one based on having received affirmative misadvice regarding the possibility of the additional sanction of involuntary civil commitment."    App. Brief. at 33–34.    But, under this Court's precedent, the district court was permitted to do that.    And, even if the district court reframed Harding's failure-to-advise claim as one based on affirmative advice, its analysis necessarily disposed of both claims.

13

**Issue 2**

Regardless of any alleged *Clisby* error, Harding failed to establish his ineffective-assistance-of-counsel claim.    Harding cannot show deficient performance because civil commitment is a collateral consequence of a guilty plea, and defense counsel isn't ineffective for failing to inform a defendant about such collateral consequences.

Harding also failed the prejudice prong of the *Strickland* analysis.   Given the opportunity at the evidentiary hearing, Harding offered nothing to support his claim that but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

**Argument**

**I.    The district court did not violate *Clisby* when it addressed Harding's claim that his attorney did not advise him that he would be subject to civil commitment.**

The district court satisfied *Clisby* because it rejected Harding's claim in a way that this Court can "meaningful[ly] review on appeal," which is all *Clisby* requires. *Senter v. United States*, 983 F.3d 1289, 1294 (11th Cir. 2020) (cleaned up).   That's true even if the district court, as Harding suggests, reframed his failure-to-advise claim as one about affirmative misadvice because district courts can "reformulate" claims and still avoid *Clisby* violations.   *Id*.   And, in any event, the district court

14

implicitly adjudicated both a failure-to-advise and an affirmative-misadvice claim

when it adopted the magistrate judge's R&R.

### A. The district court satisfied *Clisby* because it resolved Harding's claim in a way that can be meaningfully reviewed on appeal.

The rule in *Clisby* is straightforward: "district courts [must] resolve all claims

for relief raised in [habeas petitions], regardless whether habeas relief is granted or

denied."[5]  *Clisby*, 960 F.2d at 936.  A claim for relief "is any allegation of a

constitutional violation," *id*., whereas "an allegation of one constitutional violation

and an allegation of another . . . constitute two distinct claims for relief, even if both

allegations arise from the same alleged set of operative facts," *id*.

A district court need only "*facilitate meaningful appellate review* by

developing adequate factual records and making sufficiently clear findings as to the

key issues."  *Long v. United States*, 626 F.3d 1167, 1170 (11th Cir. 2010) (emphasis

added).  Indeed, even "reformulat[ing]" or "reframing" a petitioner's claim is

permissible, so long as the district court "get[s] to the root of the problem[.]"

*Senter*, 983 F.3d at 1294.

---

[5] While *Clisby* originally applied that rule to a motion filed under 28 U.S.C. § 2254, this Court has since applied it to motions filed under § 2255 as well.  *See Senter*, 983 F.3d at 1291 n.4 (11th Cir. 2020) ("We have also applied the principle announced in *Clisby* to claims raised in a § 2255 motion." (citing *Rhode v. United States*, 583 F.3d 1289, 1291 (11th Cir. 2009)).

The facts of *Senter* make that clear.  The petitioner there argued that the district court violated *Clisby* by "mischaracteriz[ing] his claim as attacking the validity of his attempted robbery conviction under Alabama law rather than as attacking the use of that conviction as an [Armed Career Criminal Act] predicate violent felony under federal law."  *Id*. at 1293.  But this Court realized that "the district court's reasoning shows that it understood at bottom that Senter's claim would require it to examine the validity of Senter's state conviction," *id*., and that "[the district court] recognized the actual rather than the purported substance of Senter's claim," *id*. at 1294.  This Court thus held that the district court "correctly identified the claim before it, and its reframing of the claim did not violate *Clisby*." *Id*.

With respect to ineffective-assistance-of-counsel claims, the district court must simply ensure that it addresses each of the lawyer's alleged failures:

> We have held that district courts violated *Clisby* when a petitioner attached a memorandum with facts demonstrating specific failures of counsel to support his "ineffective assistance of counsel claims" and the district court *addressed ineffective assistance of counsel generally but not all of the alleged failures*.

*Barritt v. Sec'y, Fla. Dept. of Corr.*, 968 F.3d 1246, 1251 (11th Cir. 2020) (emphasis added) (citing *Dupree*, 715 F.3d at 1299; *Rhode*, 583 F.3d at 1291–92).   That rule yielded a sensible result in each of those cases, and in many others.[6]

In *Barritt*, a petitioner claimed that the district court violated *Clisby* by failing to address an "alleged coercion claim that he believes was wrapped within his ineffective assistance of counsel claims[.]"   *Barritt*, 968 F.3d at 1251.   But the Court determined that "[t]he closest Barritt comes to making anything resembling an independent coercion claim is his ineffective assistance of counsel claim based on failure to advise him of a prosecutorial vindictiveness defense[.]"   *Id*.   The Court held that "the district court *did* fully address that claim, when it determined that there was no prosecutorial vindictiveness," *id*. (emphasis in original), and that "there is no indication that it was aware of a coercion claim or chose to ignore it," *id*. at 1252.

---

[6] *See Carver v. United States*, 722 F. App'x 906, 909 (11th Cir. 2018) (finding a *Clisby* violation where the district court: (1) misconstrued an ineffective-assistance-of-counsel claim as "essentially one of actual innocence"; and (2) "did not specifically address" an argument that a petitioner's trial counsel "failed to investigate certain aspects of his case"); *Holley v. United States*, 718 F. App'x 898, 903 (11th Cir. 2017) (finding a *Clisby* violation where the district court "did not expressly address a petitioner's claim of ineffective assistance based on his counsel's allegedly unreasonable sentencing advice"); *Faldas v. Sec'y, Fla. Dep't of Corr.*, 431 F. App'x 803, 804 (11th Cir. 2011) (finding a *Clisby* violation where "Faldas made two arguments about ineffective assistance of counsel, and the district court failed to address those arguments").

On the other hand, in *Dupree*, the Court found that "the district court—through little fault of its own—failed to address one of Dupree's claims for relief." 715 F.3d at 1299.  That was because: (a) the claim "consist[ed] of two sentences found in the middle of a fifteen-page memorandum attached to Dupree's petition," *id*; (b) "[t]he magistrate did not address the claim, and Dupree did not object to the magistrate judge's failure to address the claim," *id*.[7]; and (c) "[n]or did Dupree raise the claim in his reply to the Respondents' answer, which noted that the Respondents did not construe the two sentences . . . to constitute an ineffective-assistance-of-counsel claim," *id*.; *see also Rhode*, 583 F.3d at 1291–92 (finding that a petitioner had sufficiently claimed that his lawyer failed to file a motion to withdraw his guilty plea and remanding the case to the district court because it had "failed to address" that claim).

The narrow issue here, then, is whether the district court (by adopting the magistrate judge's R&R) addressed Harding's specific claim that his lawyer provided ineffective assistance by not advising him about the possibility of civil commitment.  The record suggests that it did.  The R&R included a stand-alone,

---

[7] As in *Dupree*, Harding failed to claim any purported *Clisby* violation in his objections to the R&R (CVDE 80).  It's worth noting that this Court in *Dupree* proposed "a rule that attaches consequences to the failure to object to either factual findings or legal conclusions in a magistrate judge's report and recommendation"—namely, a rule that "permits plain error review . . . if the interests of justice require such review."  *Dupree*, 715 F.3d at 1305.

three-page section—titled "Indefinite civil commitment"—addressing the claim (CVDE:19–21).   That fact alone strongly indicates that the district court "was aware of [the] claim" and did not choose "to ignore it[.]"   *Barritt*, 968 F.3d at 1252.

Not only that, the magistrate judge thoroughly analyzed the claim in that section.   He rightly applied *Bauder*, which Harding relied on to support the claim, *see* (CVDE 1-1:7), and which is this Court's only published decision (so far as we are aware) that deals with an ineffective-assistance-of-counsel claim regarding the potential consequence civil commitment.

And the magistrate judge reached a well-reasoned conclusion that's consistent with the testimony from the evidentiary hearing.   He held that Harding "has not met his burden as to the assertion that counsel affirmatively misadvised [him]," *id*., because he "did not put on any testimony that he received any misadvice regarding any indefinite civil commitment" (CVDE 72:20).   The R&R's conclusion "facilitate[d] meaningful appellate review" because the magistrate judge "develop[ed] adequate factual records and [made] sufficiently clear findings as to the key issues[.]"   *Long*, 626 F.3d at 1170.

In short, the thoroughness of the R&R in this case does not resemble any of the cases where this Court found a *Clisby* violation because, in those cases, the district court didn't address one or more claims *at all*.   *See, e.g.*, *Dupree*, 715 F.3d at 1299; *Rhode*, 583 F.3d at 1291–92.   Here, the magistrate judge addressed the

19

claim in a way that this Court can meaningfully review and, therefore, in a way that satisfied *Clisby*.

**B. The district court satisfied *Clisby* even if it reframed Harding's failure-to-advise claim into one about affirmative misadvice because its analysis necessarily disposed of both claims.**

Harding claims that the magistrate judge violated *Clisby* because—instead of specifically finding that Harding's lawyer's *failure to advise* didn't violate the Sixth Amendment—the judge "inexplicably recast [Harding's] claim as one based on having received *affirmative misadvice* regarding the possibility of the additional sanction of involuntary civil commitment." App. Br. 33–34 (emphasis added).

But Harding's distinction doesn't demonstrate that the magistrate judge failed to address his claim; it shows, rather, that he *reformulated* or *reframed* the claim, which is a practice this Court has explicitly allowed when reviewing for *Clisby* violations. *See Senter*, 983 F.3d at 1294 ("Thus, the court correctly identified the claim before it, and its reframing of the claim did not violate *Clisby*."); *see also* footnote 9, *supra*.

*Derting v. Sec'y, Dep't of Corr.*, 2022 WL 104280, *3 (11th Cir. 2022) (per curiam) is helpful. There, Derting argued "that the district court violated *Clisby* by resolving only one part of his ineffective-assistance-of-counsel claim for failure to call a defense witness and not addressing the issue of whether defense counsel's advice not to call [the witness] was deficient and constitutionally ineffective." *Id.*

at *1.    But, because Derting made mere "passing references to his argument regarding his trial counsel's misadvice," *id*. at *3, this Court held that he failed to notify the district court "that he was raising a distinct claim," *id*.

This Court explained that "even if Derting had clearly presented an ineffective-assistance claim [based on misadvice] to the district court, we would still affirm because the district court's resolution of Derting's claim that trial counsel was ineffective for failing to call [the witness] *equally and necessarily resolved Derting's claim that counsel misadvised him not to call [the witness]*."    *Id*. (emphasis added).

This Court concluded, in other words, that—even if Derting had brought two distinct ineffective-assistance-of-counsel claims (one based on his lawyer's failure to call the witness, the other based on his lawyer's misadvice to not call the witness claim)—the district court effectively resolved both of them through its analysis under *Strickland*, 466 U.S. at 687:

> Here, as we have noted, the district court, invoking *Strickland*'s prejudice prong, denied Derting's claim that counsel was ineffective for failing to call Long [(the witness)]. More specifically, the court held that Derting had offered no evidence (other than his own speculation) showing that the outcome of Derting's trial would have changed had Long been called. Plus, the court opined, the evidence against Derting was strong.

> Derting's claim that counsel misadvised him not to call Long necessarily required the same showing of prejudice that Derting's claim that counsel was ineffective for failing to call Long did. So because the district court found no prejudice arising out of counsel's alleged ineffectiveness in failing to call Long, that finding necessarily resolved

Derting's claim that counsel was ineffective for misadvising him not to call Long.

Thus, through its prejudice analysis on Derting's claim that counsel was ineffective for failing to call Long as a witness, the district court effectively resolved Derting's claim that counsel was ineffective for misadvising him not to call Long.

*Id*.

That persuasive rationale applies in this case. The magistrate judge stated that Harding couldn't show he would've proceeded to trial even "*had he known*" about the collateral consequences of his pleas. *See* R&R 20–21 (emphasis added). Because the magistrate judge's analysis is broadly grounded in terms of Harding's alleged lack of knowledge—as opposed to the type of error his lawyer supposedly made (omission versus commission)—the magistrate judge, in effect, rejected Harding's claim regardless of whether his lawyer failed to advise him or affirmatively misadvised him.

In sum, the district court did not violate *Clisby*. It addressed Harding's claim that his lawyer rendered ineffective assistance by not advising him about civil commitment in a way that this Court can meaningfully review on appeal, which is all *Clisby* requires. *See Long*, 626 F.3d at 1170. Even if the district court reframed Harding's failure-to-advise claim as one about affirmative misadvice, it was allowed to do so, and it did so in a way that necessarily disposed of both claims. *See Senter*, 983 F.3d at 1294; *see also Derting*, 2022 WL 104280, at *3.

**II.    Harding's attorney did not render ineffective assistance by failing to advise him that his *nolo contendere* plea could result in civil commitment, and even if he had, Harding suffered no prejudice from it.**

With no *Clisby* violation to speak of, this Court can reach the merits of Harding's ineffective-assistance-of-counsel claim.  *See, e.g., Barritt*, 968 F.3d at 1251–52 (finding no *Clisby* violation and proceeding to address the merits of an ineffective-assistance-of-counsel claim).

The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."   U.S. CONST. amend. VI.   The right to counsel includes "the right to effective assistance of counsel."   *Strickland*, 466 U.S. at 686 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)).

"Surmounting *Strickland*'s high bar is never an easy task," though.   *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citing *Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."); and then *Strickland*, 466 U.S. at 693 ("Attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.")).

"The question of whether an attorney provided ineffective assistance of counsel in the context of a guilty plea is subject to the familiar two-part inquiry first spelled out in [*Strickland*].   The movant must show (1) his counsel's performance

was deficient and (2) the deficient performance prejudiced his defense." *Riolo v. United States*, 38 F.4th 956, 967 (11th Cir. 2022) (cleaned up).

Before turning to Harding's failure to satisfy either the performance or the prejudice prongs of the *Strickland* analysis, we pause to note that Harding cannot support his claim's central premise: that he actually could or will be subjected to civil commitment.    He relegates the operative civil commitment statutes— including the federal framework in 18 U.S.C. § 4248 (the "Adam Walsh Act") and Florida's framework in Chapter 394, *Florida Statutes*, (the "Jimmy Ryce Act")—to a single footnote.    *See* App. Br. at 36 n.5.    And he assumes that, "[a]s a result of his pleas and convictions[,] . . . [he] "face[s] the additional sanction." *Id*.    But, throughout his motion and in his initial appellant brief, Harding implies that he doesn't *really* know if that's true.    *See* CVDE 1-1:7 ("[C]ounsel also failed to advise Petitioner that . . . he would be . . . subject to *possible* indefinite civil commitment" (emphasis added)); *see also* App. Br. at 36 ("Mr. Harding's counsel rendered ineffective assistance by failing to advise him that his nolo contendere plea *could* result in post incarceration indefinite civil confinement." (emphasis added)).

The statutes make clear that Harding's qualifiers are warranted.    The Adam Walsh Act permits—but doesn't require—the Government to "certify that [Harding] is a sexually dangerous person" and to institute civil commitment proceedings against him.    *See* 18 U.S.C. § 4248(a).    Similarly, as a result of Harding's state

convictions, the Jimmy Ryce Act permits—but doesn't require—a Florida state attorney to "refer [him] to the department for civil commitment proceedings[.]"[8] *See* Fla. Stat. § 394.9125.

Practically speaking, moreover, the reality for Harding is that he's been sentenced to imprisonment for life, and civil commitment proceedings don't begin until near "the end of [the] period of incarceration." *United States v. Youngs*, 687 F.3d 56, 58–59 (2d Cir. 2012).[9]

But, even assuming Harding could be subjected to civil commitment after serving his life sentence, the district court was right to reject his ineffective-assistance-of-counsel claim.

---

[8]    In contrast, there's no question whether Harding has to register as a sex offender under federal law.  He does, and the district court told him as much when it sentenced him.  *See* 34 U.S.C. § 20911 (defining a "sex offender" as "an individual who was convicted of a sex offense" and stating that a "sex offense" includes a violation of 18 U.S.C. § 2422(b), which Harding pled *nolo contendere* to in this case); 34 U.S.C. § 20913 (stating that "[a] sex offender *shall* register" (emphasis added)); *see also* CRDE 114 at 4 (showing that the district court, in its criminal judgment, ordered Harding "to comply with the requirements of the Sex Offender Registration and Notification Act").

[9]    *Youngs* explains how civil commitment works: "The Act permits the Attorney General or the Director of the Bureau of Prisons ("BOP") to certify an individual in the custody of the BOP *approaching the end of his period of incarceration* as a sexually dangerous person.  The inmate is provided a hearing in the district court, and his release from incarceration is stayed.  If, at the hearing, the Government demonstrates by clear and convincing evidence that the inmate is sexually dangerous, the inmate is committed to further custody until the court determines that he is no longer sexually dangerous.  *Id*. (emphasis added & cleaned up).

A. **Harding fails *Strickland*'s performance prong because a lawyer's failure to advise about civil commitment—which is "collateral consequence" of a guilty plea—isn't ineffective assistance.**

"To show deficient performance, the movant must establish that his attorney's representation fell below an objective standard of reasonableness." *Riolo*, 38 F.4th at 967 (internal quotations omitted). "The 'petitioner bears the heavy burden of showing that no competent counsel would have taken the action that his counsel did take.'" *Id.* (quoting *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013)).

Deficient performance can include situations in which a lawyer provides *affirmative misadvice* regarding civil commitment. *See Bauder*, 619 F.3d at 1275 ("Counsel's deficient performance was not his inability to anticipate a ruling on the interpretation of the Florida civil commitment statute. Rather, his deficient performance was his affirmative representation that Bauder would not be exposing himself to further detention past his sentence were Bauder to plead to the charge of aggravated stalking."). But this Court has never held that *failing to advise* about civil commitment constitutes deficient performance. And for good reason: There's ample precedent from this Court and the Supreme Court that strongly suggests the opposite.

For starters, it's well-established that neither the district court under Federal Rule of Criminal Procedure 11—nor counsel under the Sixth Amendment—has any

26

obligation to advise a defendant about "collateral consequences" of a guilty plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970) ("The standard as to the voluntariness of guilty pleas must be . . . [a] plea of guilty entered by one fully aware of the *direct* consequences[.]" (cleaned up and emphasis added)); *United States v. Morse*, 36 F.3d 1070, 1072 (11th Cir. 1994). ("[T]he court need not explain the possible collateral consequences of a guilty plea."); *see also United States v. Campbell*, 778 F.3d 764, 768 (11th Cir. 1985), *abrogated on other grounds by Padilla*, 559 U.S. at 366 ("Accordingly, counsel's failure to advise the defendant of the collateral consequences of a guilty plea cannot rise to the level of constitutionally ineffective assistance."); *Pickard v. Thompson*, 170 F. App'x 86, 87 (11th Cir. 2006) ("We have held that counsel is not constitutionally ineffective by failing to inform a defendant of 'collateral consequences' of a guilty plea." (citing *Campbell*, 778 F.3d at 768)).

And one example of a collateral consequence—the Supreme Court has expressly stated—is civil commitment.   *See Chaidez v. United States*, 568 U.S. 342, 349 n.5 ("[O]ther effects of a conviction commonly viewed as collateral include civil commitment, civil forfeiture, sex offender registration, disqualification from public benefits, and disfranchisement." (internal citation omitted)).

In line with those cases, this Court affirmed Harding's convictions and sentence on direct appeal and, in the process, rejected his argument that "his guilty

plea was not entered knowingly and voluntarily because the district court failed to inform him . . . . that he would be required to register as a sex-offender[.]" *Harding*, 696 F. App'x at 957. This Court understood that "[n]othing in Rule 11 mandates that the district court explain that a defendant convicted of certain sex offenses must comply with federal and state sex-offender registration laws." *Id*.

Relatedly, the Second Circuit has held that nothing in Rule 11 requires a district court to "advise of the possibility of civil commitment":

> Because the possibility of civil commitment will only arise at the end of Youngs's twenty-year prison sentence and then will occur only if the Government meets its high burden under the [Adam Walsh Act], civil commitment is not definite, immediate, and automatic, and is therefore not a "direct" consequence of a guilty plea as defined by this Court. Other circuits have come to the same conclusion regarding similar civil commitment statutes. *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004) (holding that potential civil commitment under a state statute was a "collateral consequence of pleading guilty"); *George v. Black*, 732 F.2d 108, 110–11 (8th Cir. 1984) (holding that the possibility that a sex offender could face civil commitment under a state statute was a collateral consequence because "civil commitment does not flow automatically from the plea"). Because civil commitment is a collateral consequence, the district court was not required to advise of the possibility of civil commitment before accepting Youngs's plea.

*Youngs*, 687 F.3d at 61.[10]

---

[10] In his appellant brief, Harding belabors the point that the state of Florida requires its trial courts to advise defendants about civil commitment. *See* App. Br. at 39–41 (discussing FLA. R. CRIM. P. 3.172(c)(9))). But the Florida rule is inapposite because "Rule 11 is not binding on the states; a wide range of constitutional plea procedures are available to the state courts." *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986) (internal quotations omitted); *see also Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) ("So long as the federal courts purport only to construe Rule

Further undermining Harding's claim are this Court's decisions that distinguish between a lawyer's affirmative misadvice, on the one hand, and failure to advise, on the other hand.

As these cases make plain, providing affirmative misadvice is a materially worse error than merely failing to advise. *See Holmes v. United States*, 876 F.2d 1545, 1552 n.8 (11th Cir. 1989) (recognizing a "distinction between [counsel's] failure to inform and giving misinformation" and noting that "misinformation . . . may be more vulnerable to constitutional challenge than mere lack of information" (internal quotations omitted)); *Downs-Morgans v. United States*, 765 F.2d 1534, 1540 (11th Cir. 1985) ("In this case we are not confronted with a situation in which counsel merely failed to inform the accused of certain collateral consequences. Instead, this case involves an allegation that the defendant specifically inquired about a matter and received a positive response from his attorney."); *Sims v. United States*, 785 F. App'x 632, 634–35 (11th Cir. 2019) ("An attorney's failure to advise his client of collateral consequences of pleading guilty, other than deportation, is not a Sixth Amendment violation. However, affirmative misadvice about the collateral consequences of a guilty plea may constitute ineffective assistance of counsel because certain considerations are so important that misinformation from counsel

---

11 rather than the due process clauses of the Constitution, state courts are not bound to follow the federal plea-taking procedures thereby established." (internal citations omitted)).

may render the guilty plea constitutionally uninformed." (internal citations omitted)).

Attempting to circumvent those cases, Harding argues that, in *Padilla*, "the Supreme Court eliminated the affirmative misadvice versus failure to advise distinction that a number of courts had drawn in addressing ineffective assistance of counsel claims based on constitutionally deficient plea advice that ultimately exposed the accused to immigration consequences and other consequences." App. Br. at 38. But the problem with that argument is that the Supreme Court—by its own admission—limited *Padilla*'s application to the specific consequence of deportation.

For one thing, the *Padilla* Court itself stated that "there is no relevant difference between an act of commission and an act of omission *in this context*"— that is, in the context of deportation. 559 U.S. at 370 (emphasis added). And the Court acknowledged the "unique nature of deportation" when it declined to categorize whether deportation as either a direct or collateral consequence of a conviction. *Id*. at 366; *see also Chaidez*, 568 U.S. at 355–56 ("[W]e relied on the special 'nature of deportation'—the severity of the penalty and the 'automatic' way it follows from conviction—to show that '[t]he collateral versus direct distinction [was] ill-suited to dispose of Padilla's claim." (quoting *Padilla*, 559 U.S. at 366)).

For another, in *Chaidez*—which was decided almost three years after

*Padilla*—the Court recognized the existence of "a separate rule for material misrepresentations, regardless whether they concerned deportation or another collateral matter." *Chaidez*, 568 U.S. at 356. And, for that proposition, the *Chaidez* Court cited (among other cases) this Court's decision in *Campbell*:

> True enough, three federal circuits (and a handful of state courts) held before *Padilla* that misstatements about deportation could support an ineffective assistance claim. But those decisions reasoned only that a lawyer may not affirmatively misrepresent his expertise or otherwise actively mislead his client on any important matter, however related to a criminal prosecution. *See, e.g., United States v. Kwan*, 407 F.3d 1005, 1015–1017 (C.A.9 2005). They co-existed happily with precedent, from the same jurisdictions (and almost all others), holding that deportation is not "so unique as to warrant an exception to the general rule that a defendant need not be advised of the [collateral] consequences of a guilty plea." *United States v. Campbell*, 778 F.2d 764, 769 (C.A.11 1985).

*Id*. So, *Padilla* doesn't help Harding's claim that his lawyer's alleged failure to advise him of civil commitment can constitute deficient performance under *Strickland*.

Nor does the very case that Harding believes helps him: *Bauder*. Harding cites *Bauder* only for the inapposite proposition that a lawyer's affirmative misadvice about the possibility of civil commitment can constitute deficient performance under *Strickland*. *See Bauder*, 619 F.3d at 1274–75. But this Court—in an earlier-issued opinion in the same case—also implied that merely failing to advise about civil commitment *would not* constitute deficient performance. *See Bauder v. Dep't of Corr. of Fla.* 333 F. App'x 422 (11th Cir. 2009).

31

In that opinion, this Court vacated the district court's initial denial of Bauder's habeas petition because, even though Bauder had claimed that his lawyer "affirmatively misadvised him," *id*. at 423, the district court "analyzed [his] claim as if he only claimed that his counsel failed to advise him of potential civil commitment," *id*. at 424.  And, in remanding the case so the district court could consider Bauder's affirmative-misadvice claim, this Court stated, significantly, that "counsel is not ineffective for failing to inform a defendant of collateral consequences of a guilty plea," *id*. (citing *Campbell*, 778 F.2d at 768), while recognizing that civil commitment is such a collateral consequence, *see id*. (internal citations omitted).  This Court, in other words, recognized that a lawyer's failure to advise about the possibility of civil commitment—because it's a collateral consequence of a guilty plea—does not constitute deficient performance under *Strickland*.

For all these reasons, Harding fails to meet his burden on *Strickland*'s "performance" prong.  And that failure is enough for this Court to affirm his conviction and sentence.  *See id*. at 687 (requiring "both showings"—deficient performance *and* prejudice).  But it's equally apparent that Harding fails on the "prejudice" prong, too.

**B.      Harding fails *Strickland*'s "prejudice" prong because he cannot show a reasonable probability that he would've gone to trial if his lawyer had advised him about civil commitment.**

As the Supreme Court explained in *Strickland*, even if Harding could demonstrate that his lawyer performed deficiently, that "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.  Rather, "any deficiencies in counsel's performance must be *prejudicial* to the defense in order to constitute ineffective assistance under the Constitution." *Id*. at 692 (emphasis added).

To establish prejudice, the movant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

"In the context of guilty pleas . . . . [t]he second, or 'prejudice,' requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.  In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).; *see also Lee*, 137 S. Ct. at 1965 ("As we held in *Hill v. Lockhart*, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the

defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" (quoting *Hill*, 474 U.S. at 59)).   In this case, Harding hasn't come close to making that showing.

Harding's entire claim rests on a single allegation in his § 2255 motion:

> Had defense counsel or the court properly advised Petitioner that[,] as a consequence of the plea, he would be subject to mandatory registration as a sex offender and to possible indefinite civil commitment, he would not have entered his plea and would have insisted on going to trial.

(CVDE 1-1:10).   But "a sentence in [a] federal habeas petition . . . is not evidence of anything." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1368 (11th Cir.), *cert. denied sub nom. McKiver v. Inch*, 142 S. Ct. 441 (2021).   In fact, such a conclusory allegation, if unsupported, may not even warrant an evidentiary hearing. *See Tejada v. Dugger*, 941 F.3d 1551, 1559 (11th Cir. 1991) ("A petitioner is not entitled to an evidentiary hearing, however, when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." (cleaned up)).

Harding was given an evidentiary hearing, though, and yet he still didn't present any testimony to corroborate his allegation that he'd have proceeded to trial had he known he could face civil commitment by pleading guilty.   *See generally* (CVDE 76); (CVDE 77).   His testimony, rather, focused on his conversations with

34

his attorney about the likelihood of receiving a sentence of life imprisonment if he were to plead guilty (CVDE 76:24–38); (CVDE 76:41–45).

The scarce amount of relevant testimony elicited during the evidentiary hearing suggests, if anything, that any advice about civil commitment would have had a negligible effect on Harding's decision to plead *nolo contendere* to Counts 5 and 6 of the Indictment. He admitted on cross-examination that, as a result of his prior work as a police officer, he knew he would have to register as a sex offender (CVDE 76:49–50).[11]

The magistrate judge, therefore, was correct to observe that Harding "did not put on any testimony that he received any misadvice regarding any indefinite civil commitment[.]" (CVDE 72:20). *Cf. Smith v. White*, 815 F.2d 1401, 1406 (11th Cir. 1987) ("Although Smith was provided a federal evidentiary hearing at which he was given an opportunity to prove [his lawyer's] actual conflict [of interest], the evidence he presented fails to do so."). And, because "[t]he burden of proof in a habeas proceeding is always on the petitioner," *Hill v. Lanahan*, 697 F.3d 1032, 1036 (11th Cir. 1983), the magistrate judge was correct to hold that Harding didn't meet that burden:

> Further, Movant cannot show that had he known about the consequence of registering as a sex offender, his plea would not have been rational under the circumstances . . . . Movant cannot show that rejecting the no

---

[11] (CVDE 72:20) ("In fact, Movant testified that he was aware of some mandatory sex-offender reporting requirements because of his training as a police officer.").

contest plea to Counts 5 and 6 would have been rational when he has already pled guilty to offenses that require him to register as a sex offender.   Thus this portion of Claim 2 should be denied.

(CVDE 72:20–21).

One last thing.   While Harding does not, and cannot, rely on any supporting evidence on appeal, *see generally* App Br., he does make one (unavailing) argument: that the magistrate judge "failed to address the Supreme Court's decision in *Lee* and instead employed a patently incorrect prejudice analysis focusing on whether Mr. Harding's rejection of a plea and decision to go to trial would have been rational under the circumstances."   App. Br. at 47.   "Under the prejudice analysis established in *Lee*," Harding says, "the inquiry focuses on whether the defendant was prejudiced by the denial of the judicial proceeding (trial) to which he had a right. Whether he would have obtained a better result by going to trial, whether his decision to forgo a plea and go to trial was rational[,] or whether his prospects of success at trial may have been infinitesimally small are simply irrelevant."   *Id*.

But that argument fails on its own terms:   The *Lee* Court applied the same rationality standard that the magistrate judge applied in the R&R.   *See Lee* 137, S. Ct. at 1968–69 (quoting *Padilla* for the proposition that "a defendant must convince the court that a decision to reject the plea bargain would have been rational under the circumstances," *Padilla*, 559 U.S. at 372, and then applying that standard to the facts of the case).

And the result would have been the same even if the magistrate judge applied the "reasonable probability" standard that was originally set forth in *Hill* and that *Lee* reaffirmed, a standard which requires Harding to demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee*, 137 S. Ct. at 1965. He can't meet that standard because he's adduced no evidence to demonstrate a reasonable probability that, had he known about the possibility of civil commitment, he wouldn't have pled guilty and instead would have proceeded to trial. Harding just says so in his appellate brief, and *Lee* made clear that's not enough. *See id*. at 1967 ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

**Conclusion**

For the foregoing reasons, the district court's decision should be affirmed.

Respectfully submitted,

Markenzy Lapointe
United States Attorney

By:    <u>s/ *Jacob Koffsky*               </u>
Jacob Koffsky
Assistant United States Attorney
99 N.E. 4th Street, #528
Miami, FL 33132
(305) 961-9386
Jacob.Koffsky@usdoj.gov

Lisa Tobin Rubio
Chief, Appellate Division

Laura Thomas Rivero
Assistant United States Attorney

Jacob Koffsky
Assistant United States Attorney
Of Counsel

38

## Certificate of Compliance

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,124 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements for Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally-based typeface using Microsoft Word 2016, 14-point Times New Roman.

## Certificate of Service

I hereby certify that four copies of the foregoing Brief for the United States were mailed to the Court of Appeals via Federal Express this 22nd day of March 2023, and that, on the same day, the foregoing brief was filed using CM/ECF and served via CM/ECF on:   Richard Carroll, Klugh, Jr., Esq., counsel for Michael Edwin Harding.

s/ *Jacob Koffsky*
Jacob Koffsky
Assistant United States Attorney

*jp*