# CASE NO. 21-14133-E

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff/Appellee*,

v.

MICHAEL HARDING,

*Defendant/Appellant.*

On Appeal from the United States District Court
for the Southern District of Florida

**APPELLANT'S REPLY BRIEF**

**RICHARD C. KLUGH, ESQ.**
**Counsel for Michael Harding**
**40 N.W. 3rd Street, PH 1**
**Miami, Florida 33128-1838**
**Tel. (305) 536-1191**
**Fax: (305)536-2170**

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

### Michael Harding v. United States, Case No. 21-14133-E

Appellant, Michael Harding, files this Certificate of Interested Persons and Corporate Disclosure Statement, listing the parties and entities interested in this appeal, as required by 11th Cir. R. 26.1.

Acosta Diana M.

Cohen, Michael B.

Funk, Daniel E.

Klugh, Richard C.

Lowenthal, Sheryl J.

Matthewman, Hon. William

Montaner, Marlene C.

Rassie, Ellen

Reid, Hon. Lisette M.

Rosenberg, Hon. Robin L.

Rubio, Lisa Tobin

White, Charles G.

White, Hon. Patrick A.

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS .....................................................C-1

TABLE OF CITATIONS ........................................................................................iv

REPLY ARGUMENT AND CITATIONS OF AUTHORITY

      I. WHETHER THE DISTRICT COURT VIOLATED *CLISBY V. JONES*, 960 F.2D 925 (11TH CIR. 1992), BY FAILING TO ADDRESS SPECIFICALLY HARDING'S CLAIM THAT HIS PLEA WAS INVOLUNTARY BECAUSE HIS ATTORNEY DID NOT ADVISE HIM THAT HE COULD BE SUBJECT TO POST INCARCERATION CIVIL COMMITMENT ................................................1

      II. REGARDLESS OF ANY POTENTIAL *CLISBY* ERROR, (A) HARDING'S ATTORNEY RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO ADVISE HIM THAT HIS NOLO CONTENDERE PLEA COULD RESULT IN POST-INCARCERATION CIVIL CONFINEMENT, AND, IF SO, (B) THAT INEFFECTIVE ASSISTANCE PREJUDICED HIM ........................5

CONCLUSION .......................................................................................................15

CERTIFICATE OF COMPLIANCE .......................................................................17

CERTIFICATE OF SERVICE ................................................................................17

## <u>TABLE OF CITATIONS</u>

**Cases**

*Chaidez v. United States*, 568 U.S. 342, 349 n.5. (2013) ............................................7

*Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992) ............................ iii, 1, 3, 4, 5, 9, 15

*Hill v. Lockhart*, 474 U.S. 52,62 (1985) ........................................................ 11, 14

*Lee v. United States*, 137 S.Ct. 1958 (2017)...................................................... 14, 15

*Libretti v. United States*, 516 U.S. 29, 50-51 (1995) ...........................................9, 11

*McKiver v. Sec'y. Dep't. of Corr.*, 991 F.3d 1357,1368 (11th Cir. 2021)...............14

*Padilla v. Kentucky*, 559 U.S. 356 (2010) .................................... 6, 7, 10, 11, 12, 13

*Senter v. United States*, 983 F.3d 1289, 1294 (11th Cir. 2020)............................1, 4

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................ 5, 7, 10, 11, 13

*Tejada v Duggar*, 941 F.2d 1551, 1559 (11th Cir. 1991).......................................14

*United States v. Harding*, 696 F.App'x 955, 957 (11th Cir 2017) ...........................8

*United States v. Youngs*, 687 F.3d 56, 61 (2d Cir. 2012) ....................................8, 9

**Statutes**
Fla.Stat. § 943.0435(1)(a)(2)-(3) ...............................................................................4

**Other Authorities**

ABA Standard 4-5.4..................................................................................................12

National Legal Aid & Defender Association Performance Guidelines for Criminal
   Defense Representation, Guideline 6.4 ................................................................12

**Rules**

Fed. R. Crim. P. 11(b)(1)(O) .............................................................6

Fed. R. Crim. P. 11 ....................................................................7, 8

Fla. R. Crim. P. 3.172(c)(9) ...........................................................6

FRAP 32(a)(7)(B) ........................................................................17

**Constitutional Provisions**

Fifth Amendment ........................................................................8, 9

Sixth Amendment ................................................................. 6, 8, 9, 10

## REPLY ARGUMENT AND CITATIONS OF AUTHORITY

### ISSUE I

WHETHER THE DISTRICT COURT VIOLATED *CLISBY V. JONES*, 960 F.2D 925 (11TH CIR. 1992), BY FAILING TO ADDRESS SPECIFICALLY HARDING'S CLAIM THAT HIS PLEA WAS INVOLUNTARY BECAUSE HIS ATTORNEY DID NOT ADVISE HIM THAT HE COULD BE SUBJECT TO POST INCARCERATION CIVIL COMMITMENT

The government first argues that the district court satisfied the mandate of *Clisby v. Jones*, 960 F.2d 925 (11th Cir. 1992), because it rejected Harding's claim in a way that this Court "can meaningful[ly] review on appeal," which is all that *Clisby* requires. G.Br.14 (citing *Senter v. United States*, 983 F.3d 1289, 1294 (11th Cir. 2020)). That argument is apparently premised on the government's mistaken notion that the district court engaged in a simple permissible reformulation or reframing of Harding's claim. G.Br.15 (citing *Senter*, 983 F.3d at 1294). Although *Senter* acknowledges the proposition that a district court may, in certain circumstances, reformulate or reframe a petitioner's claim, it does not sanction the district court recasting a claim to the extent that it creates a new claim never raised by the petitioner. That, however, is exactly what happened in this case, resulting in a clear violation of *Clisby*.

In Ground Two of his petition, Mr. Harding, directly and clearly alleged and swore under oath that his counsel "specifically failed to advise him that a plea would

1

subject him to … possible indefinite civil commitment." Cv.DE:1. In the addendum to his petition, he elaborated, adding that his counsel admittedly failed to advise, and never advised him that, as a direct consequence of pleading guilty, he could be subjected to the risk of indefinite involuntary civil commitment. Cv.DE:1 Addendum.[1]

The government, at least at that time, had no difficulty grasping the precise parameters of Mr. Harding's claim.  In its response to Mr. Harding's petition, the government observed that "In this case, Movant does not claim affirmative mis-advice. Rather, he claims that counsel never advised Movant that pleading guilty could subject him to indefinite civil commitment. Cv.DE:6:28–29.

Although both Mr. Harding and the government clearly understood that the precise basis of Mr. Harding's claim was that his counsel failed to advise him of the potential additional sanction of involuntary civil commitment, the magistrate judge and subsequently the district court, were did not reach the clear and precise parameters of the claim. Instead, only after the evidentiary hearing was held, the magistrate judge decided to address a claim never raised by Mr. Harding nor recognized by the government as having been raised in the first instance. The new

---

[1] Similarly, in Ground Five, Mr. Harding alleged that the district court was likewise erroneous in failing to specifically inform him during the plea colloquy that he faced the possible additional sanction of indefinite civil commitment under Florida's Jimmy Ryce laws. Cv.DE:1, Cv.DE:1 Addendum.

claim, created by the magistrate judge, was that Mr. Harding's counsel affirmatively misadvised him concerning his potential exposure to the additional sanction of involuntary civil commitment. That claim, as we have explained, was never raised by Mr. Harding and, never having raised the claim, he would of course not have presented evidence concerning that never raised claim at the hearing.

Rather than address the actual claim raised by Mr. Harding (and recognized by the government), the magistrate judge chose only to address the claim that he himself created. We need to look no further than the Report and Recommendation (R&R) to confirm that that is exactly what happened. In the R&R, the magistrate judge opined,

> Movant has not met his burden as to the assertion that counsel affirmatively misadvised Movant on whether he would have to register as a sex offender. Movant did not put on any testimony that he received any mis advice regarding any indefinite civil commitment or registration as a sex offender....

Cv.DE:72:20.  The actual claim raised by Mr. Harding remains unaddressed in violation of *Clisby*.

The government next argues that the district court satisfied *Clisby*, even if it reframed Harding's failure-to-advise claim into one about affirmative mis-advice, because its analysis necessarily disposed of both claims. G.Br.20. In support of this argument, the government again presses its argument that the magistrate judge merely reformulated or reframed Mr. Harding's claim, which is a practice this Court

3

has explicitly allowed when reviewing for *Clisby* violations. G.Br.20 (citing *Senter*, 983 F3d at 1294). The government is wrong for at least two reasons.

To begin with, as we have explained, the magistrate judge went far beyond the permissible practice of reformulating or reframing a claim. Rather, he impermissibly invented and addressed a claim never raised by Mr. Harding and then denied that claim.

Next, a fair reading of the magistrate judge's R&R flatly refutes the government's contention that the failure to advise claim regarding Mr. Harding's potential exposure to the sanction of involuntary civil commitment was necessarily disposed of. In the R&R, the magistrate judge first determined that,

> Movant has not met his burden as to the assertion that counsel affirmatively misadvised Movant on whether he would have to register as a sex offender. Movant did not put on any testimony that he received any mis advice regarding any indefinite civil commitment or registration as a sex offender. In fact, Movant testified that he was aware of some mandatory sex offender reporting requirements because of his training as a police officer.

Cv.DE:72:20.

The magistrate judge then determined that,

> Further, Movant cannot show that had he known about the consequence of registering as a sex offender, his plea would not have been rational under the circumstances. In fact, Movant withdrew his Motion to Vacate Counts 1-4 of the indictment. By pleading guilty to Counts 1-4, Movant would have to register as a sex offender under the Florida Sex Offender Act (Fla.Stat. § 943.0435(1)(a)(2)-(3)). Movant cannot show that rejecting the no contest plea to Counts 5 and 6 would have been

rational when he has already pled guilty to offenses that require him to register as a sex offender.

Cv.DE:72:20–21.

Thereafter, the magistrate concluded that "this portion of Claim 2 should be denied." Cv.DE:72:21. Contrary to what the government now argues, the R&R clearly shows that the magistrate judge's ruling was focused on and limited to a resolution of the sex offender registration claim.[2]

## ISSUE II

REGARDLESS OF ANY POTENTIAL *CLISBY* ERROR, (A) HARDING'S ATTORNEY RENDERED INEFFECTIVE ASSISTANCE BY FAILING TO ADVISE HIM THAT HIS NOLO CONTENDERE PLEA COULD RESULT IN POST-INCARCERATION CIVIL CONFINEMENT, AND, IF SO, (B) THAT INEFFECTIVE ASSISTANCE PREJUDICED HIM

Prior to actually addressing Mr. Harding's arguments on the merits of his claim, the government pauses "to note that Harding cannot support his claim's

---

[2] At the time the magistrate judge authored the R&R, the record clearly set forth Mr. Harding's sworn allegations that his counsel had failed to advise him that his plea could expose him to the risk of involuntary indefinite civil commitment. Those allegations were never denied by the government in its response to Mr. Harding's Petition nor were they rebutted or contradicted by any evidence adduced by the government at the hearing. Nor did the magistrate judge ever determine the allegations were not credible or insufficient to establish the performance prong requirement under *Strickland v. Washington*, 466 U.S. 668 (1984). To the contrary, those sworn allegations remain unchallenged to this day.

central premise, that he actually could, or will be subjected to civil commitment."
G.Br.24. Quoting from Mr. Harding's Motion and Initial Brief, the government
posits that Mr. Harding merely assumes that as a result of his pleas and conviction,
he faces the additional sanction of involuntary civil commitment. "Counsel also
failed to advise Petitioner that…he would be…subject to possible indefinite civil
commitment." Cv.DE:1:1-7. Mr. Harding's counsel rendered ineffective assistance
by failing to advise him that his nolo contendere plea could result in post
incarceration indefinite civil commitment. App.Br. at 36. The government implies
that counsel's failure to properly advise his client that there is only a risk or
possibility of an additional sanction, such as civil commitment or deportation is
excusable. That is not so. It is simply the risk or possibility of that significant
sanction that triggers the Sixth Amendment obligation to advise.

It is clear that courts and counsel bear the responsibility of advising the
defendant of the fact that there is a possibility or risk of the imposition of certain
sanctions in addition to traditional criminal penalties. *See, e.g*., Fed. R. Crim. P.
11(b)(1)(O) (requiring the district court to advise a defendant, who is not a United
States citizen, that if convicted, he *may* be removed from the United States, denied
citizenship, and denied admission to the United States in the future); *Padilla v.
Kentucky*, 559 U.S. 356 (2010) (holding that counsel must inform the client whether
his plea carries a *risk* of deportation); Fla. R. Crim. P. 3.172(c)(9) (requiring the

court to advise a defendant who is entering a plea to certain offenses that the plea may subject him to involuntary civil commitment upon completion of his sentence).

In addressing Mr. Harding's merits claim, the government presents a variety of arguments focusing on its primary contention that Mr. Harding has failed to surmount *Strickland*'s performance prong, because a lawyer's failure to advise about civil commitment, which is a collateral consequence of a guilty plea is not ineffective assistance. G.Br.26.

The government suggests that, "For starters it is well-established that neither the district court under Federal Rule of Criminal Procedure 11 nor counsel under the Sixth Amendment has any obligation to advise defendant about collateral consequences of a guilty plea." G.Br.26. And one example of a collateral consequence, recognized by the Supreme Court is civil commitment. G.Br.27 (citing *Chaidez v. United States*, 568 U.S. 342, 349 n.5. (2013)).  *Chaidez* does not support the government's argument. *Chaidez* did not address the issue of whether counsel is required to advise his client of the risk or possibility of indefinite involuntary civil commitment as a result of entering a guilty plea. Rather, *Chaidez* addressed whether or not *Padilla* established new law and could be applied retroactively.

The government then points to this Court's affirmance of Mr. Harding's conviction and sentence on direct appeal, noting that it rejected his argument that his guilty plea was not entered knowingly and voluntarily because the district court

7

failed to inform him that he would be required to register as a sex offender. *United States v. Harding*, 696 F.App'x 955, 957 (11th Cir 2017) . The *Harding* decision does not advance the government's contention given that the issue of whether counsel provided ineffective assistance by failing to advise Mr. Harding of the possibility of exposure to the sanction indefinite involuntary civil commitment as a result of a plea was never raised or decided by this Court.

Next, the government points to *United States v. Youngs*, 687 F.3d 56, 61 (2d Cir. 2012), which stands for the proposition that the district court is not required to advise the defendant of the possibility of civil commitment before accepting his plea. *Youngs* however is inapposite. It addressed only the court's Rule 11 or Fifth Amendment obligations and not the Sixth Amendment obligations of counsel.[3] At a minimum, the government's reliance on this Court's decision in Mr. Harding's direct appeal and the Second Circuit's decision in *Youngs* is misplaced.

To begin with, the issue in this case, framed by this Court in granting the COA focuses not on the obligations of the district court, but rather, those of counsel. This

---

[3] The government fails to mention that the *Youngs* court cautioned that "With this conclusion, we do not mean to discourage district courts from alerting defendants to the possibility of civil commitment during the plea allocution. To the contrary, we think district judges might well want to include the risks of potential post-sentence, long-term civil commitment when allocuting defendants who plead guilty to offenses subjecting them to that risk…." *Youngs*, 687 F.3d at 63 n.6.

Court's inquiry is simply "Regardless of any potential *Clisby* error, whether Harding's attorney rendered ineffective assistance by failing to advise him that his *nolo contendere plea* could result in post incarceration civil commitment, and, if so, whether that ineffective assistance prejudiced him." Moreover, the government ignores the fact that the Sixth Amendment responsibilities of counsel to advise the defendant of the consequences of a guilty plea are greater than the responsibilities of the court under the Fifth Amendment. *See, e.g.*, *Youngs* 687 F.3d at 61 (citing *Libretti v. United States*, 516 U.S. 29, 50-51 (1995), and holding that counsel, not the court, bears the responsibility of advising a defendant of the consequences of a guilty plea, apart from the "small class of rights" enumerated in Rule 11).

The government's next contention appears to suggest that counsel's failure to advise his client about the potential draconian exposure to a "collateral" consequence such as involuntary indefinite civil commitment cannot rise to the level of constitutionally deficient performance. GBr.26. This argument ignores the reality that the Supreme Court has never recognized a distinction between direct and collateral consequences in the Sixth Amendment context or whether such a distinction is appropriate. "We have never applied a distinction between direct and collateral consequences to define the scope of "constitutionally reasonable professional assistance under *Strickland*. Whether that distinction is appropriate is a

9

question we need not consider in this case." *Padilla v. Kentucky*, 559 U.S. 356, 357 (2010).

The government also urges that there was no ineffective assistance because Mr. Harding's counsel merely failed to advise him of the potential sanction of involuntary indefinite civil commitment, as opposed to providing him with affirmative mis-advice on that topic. G.Br.29. However, after *Padilla* there is no longer a distinction between ineffective assistance arising from affirmative mis-advice as opposed to a failure to advise. As the *Padilla*' Court aptly observed, "there is no relevant distinction between an act of commission and an act of omission in this context. 559 U.S. at 370.

The government desperately seeks to limit *Padilla's* elimination of that distinction to cases involving the specific consequence of deportation. G.Br.30.  In this regard, the government claims, "For one thing, the *Padilla* Court itself stated that, 'there is no relevant difference between an act of commission and an act of omission in this context,' that is, in the context of deportation." G.Br.30 (quoting *Padilla,* 559 U.S. at 370).  The government is plainly wrong. The phrase "in this context" in *Padilla* refers to the Sixth Amendment right to effective assistance of counsel, not the specific consequence of deportation.  As the *Padilla* Court further explained, "A holding limited to affirmative mis advice would invite absurd results." 559 U.S. at 370. First, it would give counsel an incentive to remain silent on matters

10

of great importance, even when answers are readily available. Silence under these circumstances would be fundamentally at odds with a critical obligation of counsel to advise the client of the advantages and disadvantages of a plea agreement. *Libretti v. United States*, 516 U.S. 29, 50–51. When attorneys know that their client faces possible exile from this country and separation from their families, they should not be encouraged to say nothing at all. Second, it would deny a class of clients the most rudimentary advice on deportation even when it is readily available. It is quintessentially the duty of counsel to provide the client with available advice about an issue like deportation and the failure to do so clearly satisfies the first part of the *Strickland* analysis. 559 U.S. at 370–71 (citing *Hill v. Lockhart*, 474 U.S. 52, 62 (1985) (White, J concurring in judgment)).

In rejecting any distinction between affirmative mis-advice and failure to advise in the context of the *Strickland* performance prong, the *Padilla* Court noted that the first prong— constitutional deficiency—is necessarily linked to the practices and expectations of the legal community. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." 559 U.S. at 366 (citing *Strickland* 466 U.S. at 688). In that regard the *Padilla* Court observed "We have long recognized that [p]revailing norms of practice as reflected in American Bar Association standards and the like are guides to determining what is reasonable. 559 U.S. at 366–67. As a basis for its decision, the *Padilla* Court then

11

applied, *inter alia*, the ABA standards and the National Legal Aid and Defender Assn., Performance Guidelines for Criminal Defense Representation that "universally require defense attorneys to advise as to the risk of deportation for non-citizen clients." 559 U.S. at 367.

As did *Padilla*, this Court should apply the ABA and related standards to determine whether counsel has a constitutional obligation to advise his client of the risk of indefinite involuntary civil commitment as a "collateral" consequence of entering a guilty plea.

ABA Standard 4-5.4 Consideration of Collateral Consequences provides in pertinent part (a) Defense counsel should identify, and advise the client of, collateral consequences that may arise from charge, plea or conviction. Counsel should investigate consequences under applicable federal, state, and local laws, and seek assistance from others with greater knowledge in specialized areas in order to be adequately, informed as to the existence and details of relevant collateral consequences. Such advice should be provided sufficiently in advance so that it may be fairly considered in a decision to pursue trial, plea, or other dispositions. Similarly, National Legal Aid & Defender Association Performance Guidelines for Criminal Defense Representation, Guideline 6.4, Entry of the Plea Before the Court provides (a) Prior to the entry of the plea, counsel should: (2) make certain that the

client fully and completely understands the maximum punishment, sanctions and other consequences the accused will be exposed to by entering the plea.

Prevailing professional norms concerning the duty to advise about potential collateral consequences are clear. Just as prevailing professional norms at the time *Padilla* was decided required counsel to inform his client of potential immigration consequences of a plea, current professional norms require counsel to advise the client of potential collateral consequences such as involuntary civil commitment. As we have shown, prevailing professional norms impose a duty on counsel to fully discuss with and advise the client of the risk of additional sanctions or "collateral" consequences he will suffer as a result of pleading guilty. This Court, guided by those norms should now decide that counsel has a duty to advise his client of the "collateral" consequences of involuntary indefinite civil commitment, and that his failure to do so constitutes ineffective assistance of counsel.

The government next argues that even if Mr. Harding demonstrated that his counsel performed deficiently, he is still not entitled to relief because he was not prejudiced by the constitutionally deficient performance. That is, he failed to satisfy *Strickland*'s prejudice prong. G.Br.33. Contrary to what the government asserts, Mr. Harding has demonstrated prejudice—he has shown that there is a reasonable probability that, but for his counsel's failure to advise him concerning the potential sanction of indefinite, involuntary, civil commitment, he would not have pleaded

13

guilty, and would have insisted on going to trial. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

The government neither denied or contested Mr. Harding's sworn statements that but for his counsel's constitutionally deficient failure to advise him on the issue of civil commitment, he would have insisted on going to trial. They now however claim that sworn assertion is insufficient. G.Br.34. The government is incorrect and its reliance on *McKiver v. Sec'y. Dep't. of Corr.*, 991 F.3d 1357,1368 (11th Cir. 2021), and *Tejada v Duggar*, 941 F.2d 1551, 1559 (11th Cir. 1991), is misplaced. *McKiver* involved a review of a state court case to determine whether a procedural default could be excused. The alleged ineffective assistance involved allegations of failure to investigate and call defense witnesses and was clearly not a failure to advise case as is Mr. Harding's. Moreover, this Court did not address nor rule on the issue or proposition for which the government now contends the case involved. *Tejada* was a procedural default case raising issues of prosecutorial misconduct and tangentially addressed the question of entitlement to an evidentiary hearing. It did not address the issues Mr. Harding has raised in this case.

Finally, the government seeks to explain the magistrate judge's inexplicable failure to even mention the Supreme Court's decision in *Lee v. United States*, 137 S.Ct. 1958 (2017). The government argues that even under the circumstances in this case, the magistrate judge was correct in determining that Mr. Harding had to show

that his decision to reject the plea bargain, would have been rational under the circumstances. G.Br.36. The government's argument (as did the magistrate judge's ruling) fails to consider what happened in this case.

To begin with, there was no plea agreement or bargain that Mr. Harding could rationally reject. Rather, based on the grossly incompetent advice and lack of advice of his trial counsel, he effectively pled straight up to the six counts with which he was charged. He received no benefits; no charges were dismissed; there was no upper limit concerning range of sentence he would be exposed to, and in fact, the constitutionally deficient representation provided by his woefully incompetent counsel placed him in a situation where there was no hope to receive anything other than the statutory maximum life sentence on Count 5. He had nothing to lose by going to trial, but by entering his plea he suffered the "denial of the entire judicial proceedings… to which he had a right." *Lee*, 137 S.Ct. at 1965.  The loss of that right constitutes prejudice. Indeed, where the result of going to trial cannot, or can never be worse than the result of entering a plea (as in Mr. Harding's case whereby entering a plea, he was guaranteed a life sentence) the decision to go to trial is per se rational while a decision to plead is per se irrational.

## <u>CONCLUSION</u>

Based upon the foregoing this Court should vacate the defendant's convictions and remand for further proceedings or alternatively, pursuant to *Clisby*

15

*v. Jones,* 960 F.2d 925 (11th Cir. 1992), remand and instruct the district court to specifically address Mr. Harding's claim that his plea was involuntary because his counsel failed to advise him that he could be subject to post incarceration civil commitment.

<div style="margin-left: 40%;">

Respectfully submitted,

s/ Richard C. Klugh
Richard C. Klugh, Esq.
Attorney for Appellant
40 N.W. 3rd Street, PH1
Miami, Florida 33128
Telephone No. (305) 536-1191
Facsimile No. (305) 536-2170

</div>

## **CERTIFICATE OF COMPLIANCE**

I certify that this Reply Brief complies with the type-volume limitation set forth in FRAP 32(a)(7)(B), and that according to the program (WORD) on which it is prepared it contains 3,698 words.

Respectfully submitted,

s/ Richard C. Klugh
RICHARD C. KLUGH

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing Reply Brief was the filed using CM/ECF and served via CM/ECF upon Jacob Koffsky, Assistant United States Attorney, this 12th day of July, 2023.

Respectfully submitted,

s/ Richard C. Klugh
RICHARD C. KLUGH

17